UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re:<br>ALICIA ROGERS,<br>      Debtor | : | |
| ------------------------------------------------------- | : | |
| ALICIA ROGERS,<br>      Appellant, | : | |
| v. | : | No. 3:12 CV 818(JCH) |
| EASTERN SAVINGS BANK,<br>      Appellee, | : | MARCH 28, 2013 |
| and | : | |
| MOLLY T. WHITON,<br>      Chapter 13 Trustee. | : | |

RULING ON DEBTOR-APPELLANT'S APPEAL (DOC. NO. 1)[1] AND
CREDITOR-APPELLEE'S MOTION TO DISMISS THE APPEAL (DOC. NO. 22)

This is an appeal from a decision of the Bankruptcy Court for the District of Connecticut: The issue on appeal is whether the changes enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, create a <u>per se</u> prohibition on the application of section 1322(b)(2)[2] in a Chapter 13 case, where the debtor is discharge-ineligible in Chapter 13 due to a recent

---

[1] "Doc. No." refers to the items on the District Court docket of this appeal.

[2] All references to statutory sections are to Title 11 of the United States Code.

Chapter 7 discharge.[3]  Adopting the rationale in In re Sadowski, 473 B.R. 12 (Bankr. D. Conn. 2011), which held that BAPCPA did create such a prohibition, the Bankruptcy Court below denied Appellant-Debtor Alicia Rogers' Motion to Determine Status of Claim pursuant to section 506(a) and confirmation of her Chapter 13 Plan.  (B'cy Doc. No. 57[4]).

As discussed below, Rogers' appeal is properly before this court.  The Order of the Bankruptcy Court is **AFFIRMED**, but on a rationale different than that of the Bankruptcy Court.

I. BACKGROUND

Rogers filed this Chapter 13 Petition on November 28, 2011.  Petition (B'cy Doc. No. 1).  Rogers had obtained a Chapter 7 discharge just two weeks earlier.  Mem. Decision and Order (B'cy Doc. No. 57) at 2 ("Bankruptcy Ruling").  The Bankruptcy Court determined that Rogers was ineligible to obtain a discharge in the instant Chapter 13 case, but she was otherwise entitled to proceed with her Petition.  Id. at 4 (quoting Sadowski, 473 B.R. at 17).

Rogers' Chapter 13 Petition lists ESB as a secured creditor.  Petition (B'cy Doc. No. 1) at 16.  ESB is the holder of a first mortgage on a three-unit residential building owned by Rogers; she lives in one unit and leases the other two.  Id. at 19; Appellant's Mem. (Doc. No. 13) at 2.  At the time of the filing, the fair market value of the property is

---

[3] Such a later Chapter 13 case is sometimes colloquially referred to as a "Chapter 20" case.

[4] The citation "B'cy Doc. No." refers to documents filed in the Bankruptcy Court for the District of Connecticut, in the case, In re Rogers, No. 11-32961(LMW).

approximately $62,000, and the amount due on the mortgage is more than $210,000. Petition (B'cy Doc. No. 1) at 11, 16.

Although her prior Chapter 7 Petition discharged Rogers of in personam liability on the mortgage, her property remains subject to ESB's continuing in rem lien on it to the full amount due on the mortgage. Seeking to extinguish part of that interest as well, Rogers' Chapter 13 Plan proposes to bifurcate the ESB mortgage into a secured claim, equal to the fair market value of the property (approximately $62,000), and an unsecured claim, equal to the excess (approximately $153,000).[5]  Chap. 13 Plan (B'cy Doc. No. 17) at 2.  Under Rogers' Chapter 13 Plan, that part of ESB's mortgage deemed unsecured would receive no payout.  Id. at 3; Bankruptcy Ruling at 3.

To effectuate this bifurcation, Rogers filed the section 506(a) Motion now at issue.  Mot. to Determine Claim Status (B'cy Doc. No. 43).  The Bankruptcy Court denied that Motion.  Bankruptcy Ruling at 3-4.  The Bankruptcy Court also denied confirmation of Rogers' Chapter 13 Plan, which Rogers conceded could not be confirmed absent approval of the section 506(a) Motion.  Id. at 4.  Rogers then filed this appeal, seeking to reverse the decision of the Bankruptcy Court on her section 506(a) Motion.  ESB objected, moving to dismiss Rogers' appeal as procedurally flawed.  Mot. to Dismiss (Doc. No. 22).  ESB further opposed the appeal on substantive grounds, arguing that the Bankruptcy Court's Ruling should be affirmed.  Appellee's Br. (Doc. No. 21).

---

[5] ESB argues that the total debt to ESB has increased from $215,256.92 to $262,803.16 since the filing by Rogers of her first bankruptcy petition.  Appellee's Br. (Doc. No. 21) at 3.

II.  REVIEW ON APPEAL

A district court has jurisdiction to review final and, in some cases, interlocutory, judgments, orders, and decrees of a bankruptcy court.  See 28 U.S.C. § 158(a).  On appeal, a district court will review de novo a bankruptcy court's conclusions of law, including its determination of the legal standards applicable.  See Fed. R. Bankr. P. 8013; In re Refco Inc., 505 F.3d 109, 116 (2d Cir. 2007); In re Ne. Contracting Co., 233 B.R. 15, 18 (D. Conn. 1999).  Findings of fact are reviewed for clear error.  Id.  The instant appeal concerns a purely legal question:  no questions of fact have been raised by the parties.

III.  DISCUSSION

A.  ESB's Motion to Dismiss the Appeal

As an initial matter, the court must consider ESB's Motion to Dismiss the instant appeal on the ground that it is interlocutory and Rogers failed to obtain leave to appeal.  On the theory that a debtor might file an alternative motion on the same issue or to approve another plan, an order denying a motion or rejecting a proposed Chapter 13 plan is generally not considered "to finally dispose of a discrete issue" and, as such, not appealable absent leave.  See, e.g., Maiorino v. Branford Sav. Bank, 691 F.2d 89, 90-91 (2d. Cir. 1982).

However, the instant appeal is distinguishable.  Having already discharged all of her dischargeable, in personam debt in her prior Chapter 7 case, Rogers' aim in this Chapter 13 case is to "strip down" ESB's mortgage to the fair market value of the underlying real property, through a combination of the section 506(a) Motion and

4

confirmation of her Chapter 13 Plan.[6]  Because Rogers concedes that approval of the Motion is required for confirmation of the Plan and that no other plan is viable, no issue remains that would render the Bankruptcy Court's Ruling interlocutory.  See Appellant's Obj. (Doc. No. 23) at ¶ 1.  This appeal, therefore, is distinguishable from the circumstances controlling in Maiorino and similar cases.  See Maiorino, 691 F.2d at 91 (reasoning that an order rejecting a plan is not final because the debtor might propose another plan and lax enforcement of the appealability of bankruptcy orders might lead parties to "run to the [reviewing court] for higher advice" at each successive stage of the bankruptcy case).

Even if the Bankruptcy Court's Ruling were interlocutory, this court has discretionary appellate jurisdiction over the instant appeal.  See 28 U.S.C. § 158(a)(3); Bankr. Rule 8003(c).  A district court may grant leave to appeal an interlocutory order by a bankruptcy court where:  (1) such order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. Mount Sinai Hosp. v. Arana, No. 11-CV-5360, 2012 WL 3307357, at *2 (E.D.N.Y. Aug. 12, 2012) (citation omitted).

Though the criteria for an interlocutory appeal can be difficult to meet, the instant appeal easily satisfies them.  First, the issue on appeal involves a pure question of law; it does not require this court to review any factual determinations made by the

---

[6]Rogers' proposal is otherwise referred to as a "strip down," the permissibility of which the Second Circuit, among other courts, has distinguished from a "strip off," at least to the extent that the lien at issue is secured "only by" the debtor's principal residence.  See In Re Miller, 462 B.R. 421, 425 (E.D.N.Y. 2011); see also, infra, at 7-8 & n.7.

Bankruptcy Court.  See id. at *4.  This is in sharp contrast to cases like Mount Sinai, where the court "would necessarily need to review all of the testimony and other evidence before the bankruptcy court."  Id.  Such "review of the record is precisely the type of 'heavily fact-based analysis' . . . that district courts in the Second Circuit decline to review on interlocutory appeal."  Id. (citations omitted).  Second, substantial ground for difference of opinion exists with respect to the controlling question of whether BAPCPA per se prohibits application of section 1322(b)(2) with respect to a discharge-ineligible debtor in a successive Chapter 13 petition.  See Sadowski, 473 B.R. at 12, 19.  Third, for the reasons discussed, supra at 4-5, a decision by this court would "materially advance the ultimate termination of the litigation."  Thus, while it is the court's view that the Ruling below is appealable as of right, this court would grant leave to appeal even if it were determined that the instant appeal is interlocutory.

    B.  The Bankruptcy Court Ruling

Relying on section 1322(b)(2)'s modification provision, Rogers' section 506(a) Motion and proposed Chapter 13 Plan seeks to "strip down" ESB's mortgage to the fair market value of the underlying real property.  That is, Rogers proposes to modify the undersecured portion of the ESB lien (approximately $155,000) into an unsecured claim that would receive no payout.  The mortgage lien would remain on the property in the amount of $62,000.  Adopting the rationale in Sadowski, the Bankruptcy Court denied both the Motion and the Plan on the ground that BAPCPA prohibits discharge-ineligible debtors from availing themselves of section 1322(b)(2).  See Bankruptcy Ruling at 4 (holding that Rogers could not void any part of the ESB lien based on the rationale in Sadowski).  Absent modification, the Bankruptcy Court ruled, Rogers could not confirm

6

her Chapter 13 Plan because ESB's objection to the treatment of its lien under the Plan violates the lien retention requirement found in section 1325(a)(5)(B)(i)(I). Id.  While the Bankruptcy Court reached the correct result -- based on the arguments with which it was presented, see, infra, note 6 -- its reliance on Sadowski was inappropriate.

Generally, an in rem lien that is undersecured -- as opposed to wholly unsecured -- may not be voided if the lien is secured "only by a security interest in real property that is the debtor's principal residence . . . ." Compare Nobelman v. Am. Sav. Bank, 508 U.S. 324, 329 (1993) (finding that section 1322(b)(2) prohibits modification of any part of the in rem lien at issue in that case because it constituted a secured claim and the corresponding real property had equity available to cover at least some part of the lien), with In re Pond, 252 F.3d 122, 126, 127 (2d Cir. 2001) (holding in rem lien at issue was not a secured claim and thus could be voided by operation of section 1322(b)(2) because there was no equity available in the underlying property to cover any portion of the lien). The undisputed facts in this case demonstrate that the ESB lien is an undersecured lien, in contrast to the second mortgage in Sadowski, which was a wholly unsecured junior mortgage. C.f. Sadowski, 473 B.R. at 14.  In other words, there is equity available in Rogers' property to cover at least some part of ESB's in rem lien; this was not so in Sadowski.  Accordingly, and in light of the holding in Nobelman, because the ESB lien could not have been voided pursuant to section 1322(b)(2) even if Rogers were eligible for a discharge in the instant Chapter 13 case, the Bankruptcy Court reached the correct result given the arguments presented to it.[7]

---

[7] It should be noted, however, that Rogers might have avoided becoming ensnared by the anti-modification provision of section 1325(a)(5)(B)(i)(I), see, supra, at 6-7, had she sought to

7

However, the Bankruptcy Court's reliance on Sadowski is problematic because this court does not view that case as correctly decided. Sadowski held that BAPCPA created a per se prohibition against voiding an otherwise modifiable lien under section 1322(b)(2) on account of a debtor's ineligibility for a discharge in a later Chapter 13 case. See Sadowski, 473 B.R. at 15, 17-20 (considering what it viewed as the policy behind BAPCPA's enactment and the amendments it made, and on those bases in essence ignored application of section 1322(b)(2) and relevant case law). Applying that per se rule, the Sadowski court denied a section 506(a) motion and Chapter 13 plan to void a wholly unsecured, in rem junior mortgage lien -- even though the lien was voidable pursuant to section 1322(b)(2)[8] -- on the ground that the debtors in that case were discharge-ineligible due to having recently obtained a Chapter 7 discharge. Id. at 17-20. The Sadowski court reasoned that BAPCPA evinced a policy of "prevent[ing] debtors [who recently obtained a Chapter 7 discharge] from using [a successive] Chapter 13 as a way to circumvent Dewsnup's prohibition against lien stripping in

---

modify ESB's lien on the ground that section 1322(b)(2) permits a debtor to "modify [even] the rights of holders of secured claims . . . [so long as the anti-modification exception does not apply]." See section 1322(b)(2); see also Ford Consumer Fin. Co., Inc. v. Maddaloni, 225 B.R. 277 (D. Conn. 1998) (holding anti-modification provision does not apply to a claim secured by a multi-unit property in which only one of the units is the debtor's principal residence). As the Supreme Court instructs in its discussion of section 1322(b)(2) in Nobelman, the term "rights" includes a creditor's "right to retain the lien until the debt is paid off . . . ." Nobelman v. Am. Sav. Bank, 508 U.S. 324, 329-30 (1993). Ostensibly, section 1322(b)(2) would have permitted Rogers to modify ESB's "right" with respect to the lien such that the lien retention requirement in section 1325(a)(5)(B)(i)(I) ultimately might not have applied.

However, Rogers did not raise this argument in the Bankruptcy Court nor in the moving papers she filed with this court: thus it is not at issue in the instant appeal. Moreover, the fundamental question left unanswered in Sadowski, see, infra, at 13-14 & n. 10, would still require determination in this case.

[8] See, supra, at 7 (comparing Nobleman with Pond).

8

Chapter 7; . . . ." Id. at 17 (referring to Dewsnup v. Timm, 502 U.S. 410 (1992)). According to Sadowski, debtors in a no-discharge Chapter 13 case cannot avail themselves of section 1322(b)(2) because their ineligibility for a discharge renders their Chapter 13 plan and petition as per se lacking "good faith."

This court respectfully disagrees.  The plain language of the applicable Bankruptcy Code sections, even where amended by BAPCPA, does not categorically prohibit the filing of a Chapter 13 petition and plan simply because the debtor has obtained a Chapter 7 discharge within the preceding four years and is discharge-ineligible in the later Chapter 13.[9]  Moreover, such later, no-discharge Chapter 13 cases are neither successive nor do they circumvent relevant case law in a way that per se violates the good faith requirements of Chapter 13.

Although BAPCPA made significant modifications to the Bankruptcy Code for the purpose of curbing certain perceived abuses, it neither explicitly barred the filing of a Chapter 13 petition and plan following a Chapter 7 discharge nor did it presumptively foreclose a debtor in such a case from modifying a claim under section 1322(b)(2). Accord Sadowski, 473 B.R. at 17 & n.7 (acknowledging that "debtors are not precluded from filing a Chapter 13 plan after receiving a Chapter 7 discharge" and that BAPCPA "made no changes to § 1322(b)(2)"); but see In re Beasley, No. 11-40642-JJR13, 2011 WL 4498942, at *3-4 n.7 (Bankr. N.D. Ala. Sept. 27, 2011) (concluding in dicta that the

---

[9]Section 1328(f) was added by BAPCPA to extend the period of time between bankruptcy discharges.  It prohibits, inter alia, the issuance of a discharge in a subsequent Chapter 13 case if the debtor received a discharge in a prior Chapter 7 case within four years preceding the filing of the subsequent Chapter 13 case.  H.R. Rep. No. 109-31, pt. 1, at *76 (2005), 2005 WL 832198 (Westlaw).

amendments enacted by BAPCPA prohibit filing a no-discharge Chapter 13 case). There also can be no dispute that a discharge may not enter in a subsequent Chapter 13 case that falls within the explicit purview of section 1328(f), or that any Chapter 13 plan (successive or otherwise) must comply with, among other provisions, the discretionary "good faith" requirements of section 1325(a)(3) and (7) in order to be confirmed. Nevertheless, there is nothing in the plain language of the applicable Bankruptcy Code sections, even where amended by BAPCPA, that presumptively prohibits application of section 1322(b)(2) in a no-discharge Chapter 13 case.

There is also no support for the conclusion that BAPCPA implicitly prohibits application of section 1322(b)(2) in a no-discharge Chapter 13 case as a consequence of preventing successive Chapter 13 debtors from circumventing Dewsnup's supposed lien-stripping prohibition in Chapter 7. As an initial matter, a no-discharge Chapter 13 petition filed for the principal purpose of modifying an in rem lien -- like Rogers' Petition in the instant appeal, and like the debtors' Petition in Sadowski -- is not properly characterized as a successive petition that has been filed to circumvent Chapter 7. Even though the debtor in such a case has obtained a discharge related to the same property in a prior Chapter 7 case, the Chapter 7 discharge was of his in personam liability only. The in rem lien on the real property is wholly separate from the debtor's personal liability on the property: the former gives a creditor recourse as to the property itself, independent of any personal liability of the debtor. See Johnson v. Home State Bank, 501 U.S. 78, 82-83, 84 (1991); accord New Milford Sav. Bank v. Jajer, 244 Conn. 251, 266-67 (1998) ("A note and a mortgage given to secure [real property] are separate instruments, executed for different purposes and, in this State, action for

foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure suit."). Consequently, modification of an in rem lien pursuant to section 1322(b)(2) in a later, no-discharge Chapter 13 case does not per se amount to a "second bite at the apple" (a successive petition that per se lacks "good faith") because the later Chapter 13 case is directed at modifying a separate obligation, i.e., the in rem lien on the property, that was not and could not have been part of the prior Chapter 7 case, which only dealt with in personam liability.

Underscoring this distinction is that no-discharge Chapter 13 cases later filed for the principal purpose of voiding an in rem lien do not implicate the kind of abusive and manipulative practices that Congress and the courts have viewed with suspect scrutiny. That is, a debtor in a later, no-discharge Chapter 13 case is neither presumptively attempting to discharge debt newly and quickly acquired after obtaining a discharge in the prior Chapter 7 case, nor seeking to further modify debt that was actually part of the prior bankruptcy. C.f., e.g., Beasley, 2011 WL 4498942, at *2, *3 (finding no "other precipitating cause for the Debtors' financial distress [in the successive Chapter 13 case] other than their own voluntary and imprudent use of credit in the wake of their chapter 7 discharge" and observing that the debtors had "managed to keep their mortgage current and [so] do not need the unique relief that chapter 13 affords to debtors who remain in default on their residential mortgages after being discharged in a recent chapter 7 case"); see also H.R. REP. NO. 109-31, pt. 1, at *2-3 (2005), 2005 WL 832198 (Westlaw) (stating that "purpose of [BAPCPA] is to improve bankruptcy law and

11

practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors" and that "[w]ith respect to the interest of creditors, the proposed reforms respond to many of the factors contributing to the increase in consumer bankruptcy filings, such as lack of personal financial accountability, the proliferation of serial filings, and the absence of effective oversight to eliminate abuse in the system," and yet not presumptively prohibiting successive filings; and further stating that "[t]he heart of the bill's consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism[,]" but making no mention of a presumptive prohibition on later, no-discharge Chapter 13 cases).

Further, no-discharge Chapter 13 cases of this type do not implicate Dewsnup's so-called prohibition on lien stripping. Contra Sadowski, 473 B.R. at 17. In Dewsnup, the Supreme Court strictly limited its holding to the "the case before [it]," 502 U.S. at 416-17, and it involved neither a no-discharge Chapter 13 petition nor application of section 1322(b)(2). Specifically, the Court in Dewnsup held that the Chapter 7 debtor in that case could not void any part of an in rem lien on two parcels of Utah farmland. Id. at 412, 417-420. The Dewsnup Court held as it did because, as noted, the discharge in Chapter 7 only pertains to a debtor's personal liability, not because in rem liens may never be voided. Id. at 418 (quoting Johnson, 501 U.S. at 84). Dewsnup, therefore, simply reaffirmed the long-standing rule of Long v. Bullard, 117 U.S. 617 (1886), that because an in rem lien is separate from a debtor's in personam liability, and because the Chapter 7 discharge only pertains to the latter, an in rem lien cannot be voided under Chapter 7. 502 U.S. at 419. This is why it is said that in rem liens "pass[ ]

through" or "survive[ ]" a Chapter 7 bankruptcy. See, e.g., Johnson, 501 U.S. at 83 (citations omitted). This is also why, in certain situations, the Bankruptcy Code permits a mortgage creditor to foreclose on an in rem lien in state court even during the pendency of a Chapter 7 case. See 11 U.S.C. 362(d)(2). Thus, the prohibition on lien stripping that Sadowski attempts to evoke from Dewsnup is irrelevant to the issue of whether section 1322(b)(2) may be applied in the case of a no-discharge Chapter 13 petition.

Instead, the critical question in Sadowski and other no-discharge Chapter 13 cases like it is this: What legal effect does an otherwise confirmable Chapter 13 plan carry absent a discharge? That is, if a Chapter 13 plan in a no-discharge case proposes to void an in rem lien that is otherwise voidable pursuant to section 1322(b)(2), is it sufficient that the plan is confirmed in order to effectuate the voiding of the lien, or must a discharge enter? Compare, e.g., In re Dang, 467 B.R. 227, 238 (Bankr. M.D. Fla. Mar. 12, 2012) (concluding in substance that a discharge is not required in order to void a wholly unsecured in rem lien by operation of section 1322(b)(2) in a successive Chapter 13 case), and In re Miller, 462 B.R. at 433 (same), with In re Orkwis, 457 B.R. 243, 250 (Bankr. E.D.N.Y. 2011) (concluding the opposite based principally on the court's expansive view of the function of section 506(a)). Absent a determination that a discharge is needed for this purpose -- which is an issue that Sadowski referenced but did not answer, see Sadowski, 473 B.R. at 17 -- the rationale in Sadowski fails for the reasons discussed.[10]

---

[10] If a discharge is necessary, then not only would such no-discharge Chapter 13 cases cease to have any practical purpose: they would likely be prohibited. See, e.g., Beasley, 2011

Again, ESB's lien could not otherwise be voided pursuant to section 1322(b)(2) even if Rogers were eligible for a discharge because she did not claim below that she sought to void the lien pursuant to section 1322(b)(2) by relying on Maddaloni, 225 B.R. at 227 (see, supra, at note 7) and Nobelman.  The Bankruptcy Court, therefore, reached the correct result on the record and arguments before it.

IV.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss the Appeal by Appellee-Creditor Eastern Savings Bank (Doc. No. 22) is **DENIED**.   The ruling of the Bankruptcy Court (B'cy Doc. No. 57) is **AFFIRMED**.  Accordingly, the relief requested in the appeal filed by Appellant-Debtor Alicia Rogers (Doc. No. 1) is **DENIED**.

**SO ORDERED.**

Dated this 28th day of March, 2013, at New Haven, Connecticut.

    /s/ Janet C. Hall
    JANET C. HALL
    UNITED STATES DISTRICT JUDGE

---

WL 4498942, at *3-4 n.7 and supra, at 10.  On the other hand, if a discharge is not required in order to effectuate the voiding of an otherwise voidable in rem lien in a no-discharge Chapter 13 case, the result in Sadowski -- and in other cases like it -- is mistaken.